# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| **SOURUSHE ZANDVAKILI** : | Case No. 1:20-cv-902 |
| 7355 Keller Road : | |
| Cincinnati, OH 45243 : | Judge _____ |
| : | |
| Plaintiff, : | |
| : | |
| v. : | |
| : | |
| **UNIVERSITY OF CINCINNATI** : | **COMPLAINT WITH JURY DEMAND** |
| 2600 Clifton Avenue : | |
| Cincinnati, OH 45220 : | |
| : | |
| -and- : | |
| : | |
| **DAVID SZYMANSKI** : | |
| In his official and individual capacities : | |
| c/o University of Cincinnati : | |
| 2600 Clifton Avenue : | |
| Cincinnati, OH 45220 : | |
| : | |
| -and- : | |
| : | |
| **NICOLAS WILLIAMS** : | |
| In his official and individual capacities : | |
| c/o University of Cincinnati : | |
| 2600 Clifton Avenue : | |
| Cincinnati, OH 45220 : | |
| : | |
| -and- : | |
| : | |
| **MARIANNE LEWIS** : | |
| In her official and individual capacities : | |
| c/o University of Cincinnati : | |
| 2600 Clifton Avenue : | |
| Cincinnati, OH 45220 : | |
| : | |
| Defendants. : | |

1

## PARTIES

1. Plaintiff Dr. Sourushe Zandvakili was born in Iran. Dr. Zandvakili is a naturalized United States citizen and a resident of the State of Ohio.

2. Defendant University of Cincinnati (the "University") is a public university that conducts business in Ohio.

3. Defendants David Szymanski, Nicolas Williams, and Marianne Lewis were, at all times relevant to this Complaint, employees of the University of Cincinnati and Plaintiff's supervisors.

## JURISDICTION AND VENUE

4. This Court has jurisdiction to hear this case pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the laws of the United States, specifically Title VII of the Civil Rights Act of 1964 as amended ("Title VII") and 42 U.S.C. § 1983.

5. Venue is proper in the Southern District of Ohio, Western Division pursuant to 28 U.S.C. § 1391(b) because the events giving rise to Plaintiff's claims occurred in this district.

6. Plaintiff timely filed two Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendant University of Cincinnati.

7. Plaintiff received Notices of Right to Sue on his charges on August 12, 2020 and September 9, 2020.

8. Plaintiff filed this Complaint within 90 days of his receipt of the August 12, 2020 Notice of Right to Sue.

9. Plaintiff has met all procedural prerequisites for his Title VII claims.

## FACTUAL ALLEGATIONS

### Plaintiff's Employment History

10. Plaintiff is a native of Iran. He became a naturalized United States citizen on October 4, 1993.

11. In September 1987, the University hired Plaintiff as an Assistant Professor in the Department of Economics of the McMicken College of Arts and Sciences. In 2011, the Economics Department was moved to the Lindner College of Business.

12. In 1993, Dr. Zandvakili was promoted to the rank of Associate Professor with Tenure. In 1999, Dr. Zandvakili was promoted to the rank of Professor with Tenure.

13. On March 18, 2008, Dr. Zandvakili was appointed to be the Head of the Department of Economics for a five-year term.

14. Plaintiff has received awards, commendations, and merit-based raises for his research and contributions to the University of Cincinnati.

15. On February 28, 2012, then-Lindner College of Business Dean David Szymanski performed Dr. Zandvakili's annual performance review. Dean Szymanski described Dr. Zandvakili's year as, "very busy, productive and successful." Dean Szymanski assigned Dr. Zandvakili to "2x Merit Band," a merit-based rank recognizing, "superior performance."

16. Plaintiff was fully qualified for all positions held at all times relevant to this Complaint.

### Dr. Zandvakili Complains of Discrimination

17. In December 2010, Plaintiff was tasked with filling two tenure-track Assistant Professor positions in the Department of Economics at an initial salary of $100,000 each.

18. On January 25, 2011, and February 4, 2011, respectively, the positions were offered to two white male candidates. One of the individuals accepted the offer. The other individual rejected the offer, leaving a position still vacant.

19. The position was advertised again. Shortly thereafter, Plaintiff informed Dean Szymanski that the Department had identified a qualified female candidate for the position. Dean Szymanski, who was out of town at a private company board meeting, told Plaintiff to make a verbal offer, with the same terms previously offered to the male candidates.

20. The next day, Dean Szymanski returned from out of town, and he and then-Director of Graduate Studies Nicolas Williams had lunch with the candidate Plaintiff recommended. Upon information and belief, Dean Szymanski first learned at this lunch meeting that the qualified female candidate was African-American.

21. After Dean Szymanski met the candidate, he told Plaintiff to withdraw the employment offer and claimed the University "no longer had the money."

22. Plaintiff challenged Dean Szymanski's motives, saying he believed the cause for concern was the candidate's race. Dean Szymanski then told Plaintiff he could hire the candidate if Plaintiff could "find the money." Plaintiff took his concern to the Office of the Provost, which said it could provide 50% of the candidate's salary, with the expectation for Dean Szymanski to match the second 50%.

23. Dean Szymanski later approved Plaintiff to offer the candidate a lesser position at lesser pay than was offered to the white male candidates.

24. The candidate was ultimately hired as a non-tenure-track Assistant Professor-Educator at a salary of $85,000.

25. In November 2013, the University posted a job opening for a tenure-track Advanced Assistant Professor position.

26. The African-American individual who had been hired as the Assistant Professor-Educator applied for the position, but was not selected to be interviewed.

27. In December 2013, Plaintiff complained to then Department Head, Nicolas Williams, that he believed he, the search committee, and Dean Szymanski did not consider the individual for this position because of her race. The candidates that were selected for an interview were not as qualified as the individual.

28. Upon information and belief, the African-American female individual resigned her position with the University in 2019 because she perceived she would not have promotional opportunities due to her race.

**Plaintiff's Offer from Illinois State University and Removal as Department Head**

29. On March 16, 2012, Dr. Zandvakili received an employment offer from Illinois State University for a tenured Full Professor position with a base salary of $180,000.

30. Dr. Zandvakili is a member of the bargaining unit for the American Association of University Professors University of Cincinnati Chapter ("the AAUP.") The AAUP and the University are parties to a collective bargaining agreement ("CBA"). Article 15 of the CBA entitles bargaining unit members like Dr. Zandvakili to request an increase to their pay to, among other reasons, match a "bona fide offer" from another university.

31. On or about March 26, 2012, pursuant to Article 15 of the CBA, Dr. Zandvakili requested an increase to his pay to match the bona fide offer he received from Illinois State University.

32. At the time Dr. Zandvakili made the request, his annual salary was approximately $118,529, which was slightly lower than but essentially consistent with the pay of the other Full Professors in the department.

33. On March 30, 2012, there was an Executive Committee Meeting for the Lindner College of Business which Dr. Zandvakili attended. At this meeting, Dean Szymanski announced a new "policy." The Dean announced that going forward, neither he nor the Provost (who at the time was Santa Ono) would support pay raises to remedy inequities or to match bona fide offers from other universities. Dean Szymanski called such requests "disingenuous to our institution." The Dean applied this new "policy" to Dr. Zandvakili and denied his requested pay increase.

34. This "policy" directly contradicts Article 15 of the Collective Bargaining Agreement ("CBA") between the University and the American Association of University Professors University of Cincinnati Chapter (the "AAUP").

35. On June 7, 2012, Dean Szymanski demoted Dr. Zandvakili from his role as Head of the Department of Economics, allegedly due to "inadequate performance," even though Dean Szymanski had given Dr. Zandvakili a "superior performance" review in February of that year.

36. Plaintiff was not placed on a performance-improvement-plan prior to being removed from his Department Head position.

37. Plaintiff was not given any prior notice, written or otherwise, of his allegedly inadequate performance.

38. Over time, Plaintiff learned that Dean Szymanski's newly announced "policy" regarding bona fide offers under Article 15 was not applied equally, or perhaps did not truly exist. Between 2013 and 2018, at two professors in the College of Business were granted pay

increases due to bona fide offers by Dean Szymanski. In 2013 alone, at least six professors University-wide were granted pay increases due to bona fide offers.

### The Interim Dean Position

39. In April 2018, the University announced Dean Szymanski would be stepping down as Dean of the Lindner College of Business and that the University was in search of an Interim Dean.

40. Plaintiff applied for this position.

41. Plaintiff was interviewed for the position but was not appointed. Associate Professor Nicolas Williams, an American-born male, was hired as Interim Dean effective April 26, 2018.

### The Director of the Master of Arts in Human Resources Position

42. On April 29, 2018, Plaintiff emailed Interim Dean Nicolas Williams and expressed his continued interest in a position as the Director of the Master of Arts in Human Resources program. This position was to become open at the end of the spring 2018 semester.

43. On April 30, 2018, Dean Williams replied and confirmed that the current Director of the Master of Arts in Human Resources was retiring at the end of the year. Interim Dean Williams also explained that although the position was never posted, and Plaintiff was not interviewed, the position had already been filled.

44. The position was filled by Adjunct Assistant Professor Mike Wagner, an American-born male.

45. On July 20, 2018, Plaintiff emailed Interim Dean Williams to express his belief that he was denied an opportunity to apply and be considered for the position because of his national origin and complaints of discrimination.

7

46. On July 24, 2018, Interim Dean Williams replied and expressed that it was not required that such positions be posted or that professors be given a chance to interview.

47. On or about November 14, 2017, Plaintiff filed a formal complaint with the University's Executive Director of Equal Opportunity & Access, Matthew Olovson.

### Inequities in Plaintiff's Pay

48. On May 31, 2018, Dr. Zandvakili wrote to the Head of the Economics Department, Dr. Debashis Pal, to request an Article 15 increase in pay based upon equity and performance. Article 15 allows a member to request an increase in pay on this basis.

49. On July 17, 2018, Dr. Pal wrote to Interim Dean Williams in support of Plaintiff's request for increased pay, noting Plaintiff's outstanding research and long dedication to the university.

50. Dr. Pal recommended the University grant Plaintiff an Article 15 pay increase of "at least $50,000" to remedy the inequities between Plaintiff's pay and that of his colleagues. By 2018, Plaintiff's pay had fallen well behind the pay of his colleagues. Although Plaintiff had the longest tenure of anyone in the Economics Department, he was the lowest-paid Professor. At least one Associate Professor was paid more than Plaintiff in 2018.

51. On October 11, 2018, Interim Dean Williams denied Plaintiff's request for an increase in pay under Article 15.

52. On November 14, 2018, Plaintiff filed his first charge with the Equal Employment Opportunity Commission, alleging that he was denied pay increases and promotions on the basis of his race and national origin, and in retaliation for his discrimination complaints.

53. On November 30, 2018, Plaintiff applied to be the permanent Dean of the Lindner College of Business. Although he met the requirements, he was not interviewed by the Search Committee.

54. On July 1, 2019, the University appointed a new permanent Dean for the Lindner College of Business, Dr. Marianne Lewis.

55. On July 1, 2019, Plaintiff submitted a second request for a pay increase under Article 15.

56. On August 7, 2019, Plaintiff met with Dean Lewis, made her aware of the facts herein, and complained that he was being discriminated against on the basis of his race and national origin.

57. During the meeting, Plaintiff asked Dean Lewis about the status of his Article 15 pay increase request. Dean Lewis told Plaintiff that she had been instructed by the Office of the Provost not to process his pay increase request while his EEOC charge was pending.

58. On August 10, 2019, Dean Lewis backpedaled her August 7 statement, saying that she had talked to the Office of the Provost who confirmed that Plaintiff's Article 15 request and EEOC charge were "separate and distinct." Nevertheless, Dean Lewis stated that she would not review Plaintiff's pay increase request until November or December.

59. On August 11, 2019, Plaintiff responded to Dean Lewis and complained that any delay on his pay increase request would continue to cause him financial hardship. Plaintiff also told Dean Lewis that her comments that she would not review his request while his EEOC was pending, and her delay in making a decision, were evidence of discrimination. Plaintiff requested a decision on his pay increase request before the start of the academic year.

60. Despite Plaintiff's request for a decision on his pay increase request before the start of the 2019-2020 academic year, Dean Lewis did not issue a decision until March 2, 2020. Despite Dr. Pal's recommendation that Dr. Zandvakili's salary be increased by at least $50,000, Dean Lewis granted a pay increase of only $6,000.

61. On the same day that Dean Lewis issued her decision on Dr. Zandvakili's pay increase request, she announced a new policy regarding pay increases in the Lindner College of Business. Dean Lewis used this policy to evaluate Dr. Zandvakili's pay increase request, even though he had submitted it 9 months earlier, before the policy existed.

62. Though Plaintiff is the longest-tenured Professor in his department, he remains the lowest-paid Full Professor, and his pay is below that of some Associate Professors and one recently-promoted Full Professor.

### The Associate Dean—Impact & Partnerships Position

63. On December 6, 2019, Plaintiff applied for a vacancy in the Associate Dean—Impact & Partnerships position in the Lindner College of Business. Plaintiff was interviewed by Dean Lewis and the Search Committee, but on December 17, 2020, he learned that Chuck Sox, an American-born male, was selected for the position over Plaintiff.

64. On June 16, 2020, Plaintiff filed a second EEOC charge alleging that the University's failure to pay him at an equal rate to his colleagues, and its failure promote him to the Associate Dean—Impact & Partnerships position, was discriminatory and retaliatory.

### COUNT I

### (National Origin Discrimination – Title VII)

65. Plaintiff re-alleges the foregoing paragraphs as if fully rewritten herein.

66. Plaintiff's nation of origin is Iran. He is a naturalized U.S. citizen.

67. Plaintiff was fully qualified for his position at all times relevant herein.

68. Defendant University of Cincinnati's acts of discrimination against Plaintiff include but are not limited to paying Plaintiff less than his similarly-situated colleagues and denying Plaintiff opportunities for advancement because of his national origin and his discrimination complaints.

69. Defendant University of Cincinnati's conduct was intentional, willful, wanton, malicious and in reckless disregard for Plaintiff's rights.

70. As a direct and proximate result of Defendant University of Cincinnati's conduct, Plaintiff has suffered harm and is entitled to judgment and damages.

## COUNT II

### (Retaliation – Title VII)

71. Plaintiff re-alleges the foregoing paragraphs as if fully rewritten herein.

72. Plaintiff's protected activity includes, but is not limited to, complaining that Dean Szymanski discriminated against a colleague because of her race, complaining that Plaintiff had been discriminated against because of his national origin, and complaining that Plaintiff had experienced retaliation because of his discrimination complaints.

73. Defendant University of Cincinnati's acts of retaliation against Plaintiff include but are not limited to paying Plaintiff less than his similarly-situated colleagues and denying Plaintiff opportunity for advancement because of his discrimination and retaliation complaints.

74. Defendant University of Cincinnati's conduct was intentional, willful, wanton, malicious and in reckless disregard for Plaintiff's rights.

75. As a direct and proximate result of Defendant University of Cincinnati's retaliation, Plaintiff has suffered harm and is entitled to judgment and damages.

## **COUNT III**

**(42 U.S.C. 1983)**

76.     Plaintiff re-alleges the foregoing paragraphs as if fully rewritten herein.

77.     42 U.S.C. 1983 prohibits a person from depriving an individual of rights, privileges, or immunities secured by the Constitution under color of law.

78.     The Fourteenth Amendment to the United States Constitution protects persons from being subjected to discrimination on the basis of race and national origin, and from retaliation on the basis of race and national origin discrimination complaints.

79.     Defendants David Szymanski, Nicolas Williams, and Marianne Lewis's discriminatory acts against Plaintiff include, but are not limited to, paying Plaintiff less than his similarly-situated colleagues and denying Plaintiff opportunity for advancement because of his national origin and in retaliation for his discrimination and retaliation complaints.

80.     Defendants David Szymanski, Nicolas Williams, and Marianne Lewis, at all times relevant to this Complaint, were Plaintiff's supervisors and acted under the color of state law.

81.     Defendants David Szymanski, Nicolas Williams, and Marianne Lewis's conduct was intentional, willful, wanton, malicious and in reckless disregard for Plaintiff's rights.

82.     As a direct and proximate result of Defendants' retaliation, Plaintiff has suffered harm and is entitled to judgment and damages.

**WHEREFORE**, Plaintiff Sourushe Zandvakili demands judgment against Defendants as follows:

(a) That Defendants be enjoined from further unlawful conduct as described in the Complaint;

12

(b) That Plaintiff be awarded lost pay and benefits;

(c) That Plaintiff be awarded compensatory damages;

(d) That Plaintiff be awarded punitive damages;

(e) That Plaintiff be awarded pre-judgment interest;

(f) That Plaintiff be awarded reasonable attorney's fees and costs;

(g) That Plaintiff be compensated for the adverse tax consequences of receiving a lump sum award rather than compensation over several separate tax years;

(h) That Plaintiff be awarded all other legal and equitable relief to which he may be entitled.

Respectfully submitted,

/s/ *Katherine Daughtrey Neff*
Katherine Daughtrey Neff (0082245)
Erin M. Heidrich (0093828)
Trial Attorneys for Plaintiff
FREKING MYERS & REUL LLC
600 Vine Street, 9th Floor
Cincinnati, OH 45202
PH: 513/721-1975 – FX: 513/651-2570
*kneff@fmr.law*
*eheidrich@fmr.law*

## JURY DEMAND

Plaintiff demands a jury trial on all claims eligible to be tried to a jury.

/s/ *Katherine Daughtrey Neff*